IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| ROMINA MOZAFFARIAN, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 8:22-cv-788 |
| : | |
| EXPERIAN INFORMATION SOLTUIONS, INC., : | |
| : | |
| Defendant. : | |
| : | |

**CLASS ACTION COMPLAINT**

Plaintiff Romina Mozaffarian, by counsel, alleges the following Complaint against Experian Information Solutions, Inc. ("Experian"):

**PRELIMINARY STATEMENT**

1. When enacting the Fair Credit Reporting Act, Congress found that consumer reporting agencies "have assumed a vital role" in society, and there was a need to ensure that they "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S. Code § 1681(a)(3)-(4). To accomplish Congress' goal, the FCRA contains several requirements to protect consumers, including § 1681e(b), which is one of the statute's cornerstone provisions.

2. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires it to follow reasonable procedures to assure maximum possible accuracy of the information about the individual about whom the report relates. 15 U.S.C. § 1681e(b). This section imposes a high standard on credit reporting agencies. *See, e.g.*, *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that " 'assure' means 'to make sure or certain: put beyond all doubt,'"

1

"'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived'" (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993)).

3. Experian violated this requirement by publishing incorrect information about Ms. Mozaffarian's mortgage: in this case, likely representative of several others, Experian published the status of Ms. Mozaffarian's mortgage as "foreclosure" even though it was apparent—on the face of the report—no foreclosure occurred and the loan was instead transferred to another lender.

4. Experian's reporting violated the FCRA because Experian lacked any reasonable procedures to prevent this inaccurate and inconsistent information. *See* Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Report with Summary of Interpretations* 67 (July 2011) (explaining that a consumer reporting agency "must maintain procedures to avoid reporting information with obvious logical inconsistencies, such as a credit account opened when the consumer was known to be a minor").

5. As a result, Ms. Mozaffarian alleges a class claim against Experian under 15 U.S.C. 1681e(b) and seeks an award of statutory damages, punitive damages, and her attorney's fees and costs for herself and similarly situated consumers.

## JURISDICTION

6. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

7. Venue is proper in this District and Division because a substantial part of the events and omissions giving rise to the claim occurred in this District and Division

## PARTIES

8. Ms. Mozaffarian is a natural person living within this Division and is a "consumer" as defined by 15 U.S.C. §1681a(c).

9.      Experian is a foreign corporation with its principal place of business in Costa Mesa, California. It is a "consumer reporting agency" under § 1681a(f) of the FCRA. During the relevant timeframe, Experian for monetary fees and using interstate commerce, regularly engaged in assembling consumer credit information to furnish consumer reports to third parties.

## FACTUAL ALLEGATIONS

**A.      Ms. Mozaffarian's experience and Experian's lack of procedures.**

10.     Several years ago, Ms. Mozaffarian owned a home that was subject to a mortgage serviced by Bank of America.

11.     In 2014, Ms. Mozaffarian experienced financial difficulties and fell behind on her monthly mortgage payments.

12.     To avoid a potential foreclosure and further damage to her credit, Ms. Mozaffarian decided to sell the home through a short sale.

13.     Before the short sale, Bank of America transferred her mortgage to RCS Mortgage.

14.     The sale was completed on June 30, 2015, and Ms. Mozaffarian's mortgage was settled and paid for less than the full balance as part of a short sale.

15.     In September 2020, Ms. Mozaffarian was seeking to take advantage of the historically low interest rates and applied for a mortgage with Mortgage 4U, LLC.

16.     As part of her mortgage application, Mortgage 4U requested Ms. Mozaffarian's credit report from Advantage Credit.

17.     Advatage Credit requested Ms. Mozaffarian's credit report from Experian.

18.     In response to Advantage Credit's request, Experian provided inaccurate and derogatory information about Ms. Mozaffarian.

19. Experian reported Ms. Mozaffarian's prior Bank of America mortgage with a status of "foreclosure."

20. Experian's reporting was inaccurate, incomplete, and materially misleading because her mortgage was not foreclosed.

21. In addition, Experian should have known that its reporting of a foreclosure was inaccurate because it also reported that the Bank of America account was also "transferred to another lender."

22. This reporting was inaccurate, illogical, and facially inconsistent. If a foreclosure had actually occurred, there would be no reason for the loan to be transferred to another lender.

23. Experian knew or should have known that its false reporting of the foreclosure status would limit Ms. Mozaffarian's ability to obtain credit.

24. For example, Discover Bank's website explains that the "status" of an account section of a credit report is an important section that lenders view to assess credit risk and determine interest rates. *See Understanding Status of Accounts on a Credit Report*, Discover, https://www.discover.com/credit-cards/resources/status-of-accounts-on-credit-report/; *see also What's the "Status of Accounts" Section of My Credit Report?*, myFICO blog (Mar. 7, 2019) ("The 'Status of Accounts' section is viewed by lenders so they can assess your creditworthiness. It also enables them to determine how high (or low) a lending risk you are and how high (or low) your loan interest rate will be."), https://blog.myfico.com/whats-the-status-of-accounts-section-of-my-credit-report/.

25. As another example, an Experian blog post on its website explains that "settling an account is typically viewed more favorably than not paying it at all." Stacy Smith, *Is it Better to*

4

*Pay off Bad Debt or to Settle it?*, Experian (June 20, 2017), https://www.experian.com/blogs/ask-experian/is-it-better-to-pay-off-bad-debt-or-to-settle-it/.

26.     In fact, most mortgage lenders will not originate a conventional mortgage to anyone who has suffered a foreclosure in the past seven years because both Fannie Mae and Freddie Mac consider those loans ineligible for purchase.[1]

27.     Experian's reporting also contradicts the Industry Standards set forth by the Consumer Data Industry Association (CDIA).

28.     The CDIA is a trade association for credit reporting agencies, and its Metro 2 Format is a standardized reporting format used to provide information about consumer accounts to the credit reporting agencies. CDIA's manual is often cited as the industry standard for credit reporting procedures.

29.     The Metro 2 Format was developed by a task force comprised of representatives from Equifax, Experian, Innovis, and Trans Union. "The task force's mission is to provide a standardized method for the reporting of accurate, complete and timely data." CDIA, *Credit Reporting Resource Guide* 1-2 (2015).

30.     The CDIA's manual specifically addresses the issue of when to use a foreclosure status. Among other things, the CDIA's manual instructs that "foreclosure proceeding started… should be reported each month as long as the comment applies." *Id*. at 6-67. By contrast, if a

---

[1]     Fannie Mae: https://selling-guide.fanniemae.com/Selling-Guide/Origination-thru-Closing/Subpart-B3-Underwriting-Borrowers/Chapter-B3-5-Credit-Assessment/Section-B3-5-3-Traditional-Credit-History/1032994681/B3-5-3-07-Significant-Derogatory-Credit-Events-Waiting-Periods-and-Re-establishing-Credit-08-07-2019.htm#Foreclosure (last visited July 9, 2021)
Freddie Mac: https://guide.freddiemac.com/app/guide/section/5202.5 (last visited July 9, 2021).

foreclosure has been cancelled, furnishers are instructed to "stop reporting the comment" related to the foreclosure and it "will be deleted from the consumer reporting agencies' files." *Id*.

31. As a result of Experian's inaccurate and misleading reporting, Ms. Mozaffarian's mortgage application was first denied and she suffered significant emotional distress, including embarrassment.

### B.   Experian's violations of the FCRA were willful.

32. The Supreme Court has held that willfulness under the FCRA encompasses not only a knowing violation but also a violation committed in reckless disregard of statutory obligations. *Safeco Insurance Company of America v. Burr*, 551 U.S. 47 (2007).

33. Recklessness is measured by an objective standard: conduct that creates an "unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68.

34. Experian willfully violated the FCRA because its procedures caused an unjustifiably high risk of harm that was either known or was so obvious it should have been known. More specifically, Experian had information available to it—including information included in the report—showing that Ms. Mozaffarian's mortgage was not foreclosed.

35. As the Federal Trade Commission has explained, reasonable procedures to assure maximum possibly accuracy include "establish[ing] procedures to avoid reporting information from its furnishers that appears implausible or inconsistent." FTC, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Report with Summary of Interpretations* 67 (July 2011), available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

36. A credit reporting agency "must maintain procedures to avoid reporting information with obvious logical inconsistencies, such as a credit account opened when the consumer was known to be a minor" or, as here, where a consumer's mortgage was reported as erroneously foreclosed even though it was transferred.

37. If Experian had reasonable procedures in place in line with the FTC's guidelines and the plain language of the FCRA, Experian would not have reported the inaccurate, derogatory information about Ms. Mozaffarian.

38. Upon information and belief, Experian has also been notified of the inadequacy of its procedures through disputes submitted by consumers and complaints from resellers about the inaccuracy of the data Experian provided.

39. Despite these complaints and lawsuits, Experian has continued to rely on its inadequate procedures to the detriment of Ms. Mozaffarian and the class members.

**COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b)**
**Class Claim**

40. Ms. Mozaffarian restates each of the preceding allegations.

41. Under Fed. R. Civ. P. 23, Ms. Mozaffarian sues for herself and the following class:

All natural persons who were the subject: (1) of a consumer report furnished by the Experian to a third party within the five years preceding the filing date of this Complaint; (2) where the report contained a status indicating that a mortgage was foreclosed; and (3) where the report or information possessed by Experian indicated that the mortgage was resolved by something other than a foreclosure, including because it was transferred to another lender.

Ms. Mozaffarian is a member of this class.

42. **Numerosity**. Upon information and belief, Ms. Mozaffarian alleges that the class is so numerous that joinder of the claims of all class members is impractical. The class members'

names and addresses are identifiable through the Experians's documents and records and they may be notified of the pendency of this action by publication or mailed notice.

43. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Experan blindly includes a facially inconsistent foreclosure notation that it obtains from furnishers into its reports with no procedure to assure the accuracy or completeness of the underlying data; (b) whether this conduct violated the FCRA; and (c) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the Plaintiff's and putative class members' rights.

44. **Typicality**. Ms. Mozaffarian's claims are typical of the claims of each putative class member and all claims are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of the same FCRA provision, 15 U.S.C. §1681e(b). This claim challenges Experian's consumer reporting procedures and does not depend on any individualized facts. For purposes of class certification, Plaintiff seeks only statutory and punitive damages. These damages are appropriate in circumstances like this one where injuries are particularized and concrete, but difficult to quantify, rendering the recovery of class statutory damages ideal and appropriate. Ms. Mozaffarian is also entitled to the relief under the same causes of action as the other class members.

45. **Adequacy**. Ms. Mozaffarian will adequately protect the class's interests. Ms. Mozaffarian has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Ms. Mozaffarian nor her counsel have any interests

that might cause them not to vigorously pursue this action. Ms. Mozaffarian is aware of her responsibilities to the putative class and has accepted those responsibilities.

46. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

    a. As alleged above, the questions of law or fact common to the class members predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. The statutory and punitive damages sought by each member are such that the individual prosecution would prove burdensome and expensive given the complex and extensive litigation required by Defendant's conduct. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

    b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Most consumers affected by Experian's conduct are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues here would waste judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

47. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparing the consumer reports it published and maintained about Ms. Mozaffarian and the putative class members by publishing

facially inconsistent information about their mortgages with no meaningful procedures to prevent the inaccurate reporting.

48. Experian's violation of 15 U.S.C. § 1681e(b) was willful, rendering it liable under 15 U.S.C. § 1681n. In the alternative, Experian was negligent, entitling Ms. Mozaffarian to recover under 15 U.S.C. § 1681o.[2]

49. In addition, Ms. Mozaffarian and each class member suffered an actual injury because of the Defendant's violation, as alleged here.

50. Ms. Mozaffarian and the putative class members are entitled to recover statutory damages, punitive damages, costs, and attorney's fees from Experian under 15 U.S.C. § 1681n.

WHEREFORE, Ms. Mozaffarian moves for class certification and for judgment against Experian for statutory damages, punitive damages, and attorneys' fees and costs, as well as any other relief that the Court finds appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
**ROMINA MOZAFFARIAN**

By: _____/s/ Kristi C. Kelly_____
Kristi C. Kelly (Bar No. 07244)
J. Patrick McNichol (Bar No. 19034)
**Kelly Guzzo, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: pat@kellyguzzo.com

*Counsel for Plaintiff*

---

[2] Plaintiff seeks statutory and punitive damages on behalf of herself and others. If class certification is denied, Plaintiff intends to seek actual damages for Defendant's violation.